Okay, this seems okay. This seems okay. Well, are you okay? Okay, please proceed. Got a minute. I'm sorry, we're you're gonna have to slow down. We are struggling with your Connection. And it sounds like Council opposing Council can't hear you at all. Sorry, we could hear her earlier. Yes, we could hear it really early. Okay. Do you want to try again? Your Honors, are you able to hear me now? Yes, please. Now we've lost you again. Are you able to hear me? We can hear you. No, this is not working. I'm sorry, this is not working. If you are signed into both devices, please take the sound off of your computer and just use the phone. So that we can you can still see everyone and you can see everything that's going on, but you can speak through the phone. Are you able to hear me? Are you able to hear me? One more time. Sorry. Hello. That's better. Try again. Are you able to hear me? Yes, please proceed. Plaintiff asked the court to reverse dismissal of plaintiff. We're struggling again. We're struggling again. Sorry, I can try styling on another number. Now we can hear you. Now we can hear you. So my advice is to go slow and and to watch watch us. We'll let you know when we have trouble. Go ahead. Thank you. Plaintiff asked the court to reverse dismissal of plaintiff's claims for promptory, thoughtful, and fraudulent inducement arising from the Bloomberg campaign's promise that plaintiffs would have the opportunity to work on the general election for the Democrats. Even if Mr. Bloomberg withdrew from the race campaign, these promises clearly consistently and repeatedly to plaintiffs and hundreds of other field organizers. Not only when they were hired, but throughout their employment and to the public at large. It promises to induce plaintiffs to join Bloomberg staff, despite the belated and unlikely entry into the presidential race in November 2019. After other candidates already started with Bob, knowing that Bloomberg needed to mount percolating efforts to immediately hire staff and garner support and that workers were unlikely to uproot their lives for a one month job. The campaign promised that the opportunity to work on the general. What about what about what about the provisions? And what about the provisions in the contract signed by each of the plaintiffs to the fact that they were at will employees? Why doesn't that as a matter of law preclude these claims? Yes. Thank you, Your Honor. Our position is that the plaintiff could have reasonably relied on the on the campaign. This is despite their status. And this report aired and told me otherwise. Our position is that plaintiffs need only make a plausible showing that they reasonably relied on the general election promise, despite their presumed at will status. Your lines are reasonable because the campaign could have maintained. Right. Right. If I may, I think what Justin is asking is, doesn't the fact that it's at will change, change the scenario materially? Right. I mean, this is not a question of is this like a defense that they can that they can make and making it just unactionable at this point, irrespective of the reasonableness of relying. Well, our position is that reliance was reasonable. And that's because I think the don't the cases say, don't the cases say that as a matter of law, reliance cannot be reasonable when there is an express provision for at will employment? The cases do not say that there can never be reasonable reliance. I agree with that, but there may be some instances where where if the agreement, the oral promise is extraneous. But here, the promise of continued employment is at the heart of what's covered by the at will employment clause. And so, you know, it's not the case to say that as a matter of law, the claim is precluded in these circumstances. Your Honor, I think they do not. And that's because, unlike the cases that hold that an individual employee who simply relies on vague promises of continued employment, that is not what plaintiffs allege here. Plaintiffs do not simply allege the promise of continued employment, but rather a specific opportunity to work on the general election. It's not contingent on continued continuous employment with the campaign. In other words, the campaign could have maintained its at will rights and even terminated plain formal employment while still substantially honoring the promise to work on the general election. This is something that the promise itself assumes that there was an eventuality or a condition where Bloomberg would drop out of the race. And if that happened, even if his campaign essentially stopped, you know, working on behalf of Michael Bloomberg and stopped doing the work of promoting Mr. Bloomberg, it's to work for a different candidate for a different campaign in a different capacity. So it's not the same as simply a promise of continued employment with the campaign. And we think that sort of makes this case very unique and very distinct from other cases holding, you know, that they rely on a promise of continuous employment with their employees. So if I understand the plan, go ahead. I'm sorry. No, go ahead. Go ahead. And I would say I was just going to continue. And in dismissing plaintiffs, I think they the district court erred by improperly narrowing allegations to solely assert a promise of guaranteed continued employment, effectively disregarding this alleged promise of the specific opportunity to work on the general election. That promise did not require continuous employment of the campaign. It was not negated by hiring documents. Therefore, plaintiffs could have reasonably relied on it. So the district court could say it's a matter of lawful escape. What would be the salary at which they were working? Where would one find the reference to decide how much they're suing for when they say they were entitled under this promise to go on working? How much were they entitled to be paid? And where does one find that? Well, Your Honor, the promise when it was made did not have all the specifics of what their salary would be and exactly what. I mean, obviously, there were some unknowns about the promise because it was not even who the ultimate nominee would be. Well, how can there be an enforceable contract to employ somebody if it doesn't include any of the terms, particularly the term of how much the person would be paid? Say I promise to employ you, but I haven't promised to pay you any specific amount of money. Where would you derive the – you're saying that this is an obligation that arises otherwise than from their employment contract that was secured by accepting the offer of employment with the campaign. But if that's true, it's a very defective contract because it doesn't contain absolutely essential terms. Well, Your Honor, I think the promise did entail the claimants would continue to be paid. The rate of pay and the terms and conditions of their employment were defined at the outset, and there's nothing to suggest – Define where. Define where and how. I believe that their offer letters and their hiring documents did provide – Well, yes, but those offer letters were the – those offer letters, when accepted, were the basis of the at-will contract with the campaign. I thought you were saying that there was an independent contract in addition to the contract to work for the campaign that was memorialized and the terms of which were provided by the offer letter. I thought you were arguing that, well, there was another contract that provided that they would be employed to work for other campaigns after Bloomberg dropped out. And if so, where would we find the – what was the rate of pay that they were contracted for? Where does one find that? Well, Your Honor, I think that is sort of subsumed in the promise that was made, that it was assumed that those conditions would apply to the opportunity to work on election as well. I don't think it's necessary. I don't think the case law holds that every aspect of employment relationship is defined in order for there to be an enforceable promise. And here, the damage is not just the set free that Clinton would have been entitled to, but there's also a reliance stance that they, you know, Clinton gave up other opportunities. They have, you know, costs of moving. They lost jobs. They had a purchase with the campaign. So they have actual damage associated with the position they took last. And they also have expectation damages about what they were promised if the campaign failed to prove up. Thank you. We'll hear from you on rebuttal. And Ms. Bloom, when you're ready. Good morning, Your Honor, Your Honors. My name is Elise Bloom, and I represent Bloomberg 2020, the campaign. As Your Honors have indicated through their questions, we believe that Judge Swain correctly dismissed this case. The offer letters very clearly and unambiguously provided that the plaintiffs were employed at well. And under the case law, we believe that that would preclude claims for promissory estoppel and or fraudulent inducement, and that Judge Swain properly concluded as much. Sorry, can I ask, aren't the district courts split on the issue of whether promissory estoppel is categorically precluded in the employment context? And I feel like I've seen at least a couple of New York State cases that have allowed these cases to proceed in the employment context. Yes, Your Honor, you're correct that there are cases that there's not an absolute bar that we've seen from the district court cases. But what we do see from the district court cases consistently is that in order to state a claim for promissory estoppel in the employment context, you have to demonstrate that there's something separate and apart from the employment issue at large. What about the promise that if Mr. Bloomberg were to drop out, they would be put to work somewhere else for some other candidate? Is that something that's arguably separate and distinct? No, Your Honor, it's not. And the reason why it's not is because the court need look no further than- I'm sorry, I'm going to have to ask Ms. Jasmine, there's something going on with the clock. It's not reducing. Oh, sorry. Okay, please, continue. Oh, I'm sorry. The plaintiffs- the reason why that doesn't save their claims in this case is because the plaintiffs- well, first of all, you heard opposing counsel say that what they are relying on here for purposes of defining the employment relationship are the offer letters. And the offer letters are very clear that they provide employment at will. So one of the things that I'm troubled by, and I'm hoping you can help me out, is that I don't think you're asking us to accept a proposition that somebody can lie as much as they want as long as they're engaging with would-be employees who aren't sophisticated enough to know that a written document trumps. So where is the reasonable line between what you are- what I'm hearing? Because I'm seeing very broad, unsustainable language being used when you say things like, it was very clearly an employment context or very clear in the employment documents, and we also had a mountain of information suggesting that there were promises made. So there are several things that demonstrate- there are several things that I think are dispositive in this case. The first thing that's dispositive in this case- and no, we are not asking you- we're not asking you to make law here. We think it's pretty clear that just from the allegations in Plaintiff's 97-page complaint that what they are challenging here is the fact that they claim the campaign promised them employment through November of 2020, and what they are claiming is that the campaign breached that promise. And if you look specifically at their allegations under fraudulent inducement and promissory estoppel, you see right there on the face of the complaint that the allegation is that the campaign breached a promise to them by failing to employ them through November of 2020. And then in terms of the- and then it's clear, and I don't think there's any dispute, that the offer letters, the employee handbook, and other documents that the plaintiff signed, and in fact the- the idea that people can say whatever they want. I don't think you're asking us to adopt a rule that says that an employer can say whatever it wants as long as there is some cautionary language in the employment context, right? You're not asking us to say that someone is immune from legal obligations just because somebody- an employee may not know that the document trumps. No, we're not asking for that. But what we are saying is that in terms of, for example, a promissory estoppel claim, in the employment context, when you have an at-will employee, that at-will employee would need to show three things which Judge Swain, we believe, correctly found were not present here in order to avoid the consequences of the at-will language. And the first is that something separate and apart from the actual employment arrangement. And I think we've talked about the fact that the beef here is that they were terminated before November of 2020. They would also have to show some kind of reasonable reliance. And I do believe that the case law is pretty clear, that an at-will employee cannot demonstrate reasonable reliance on a promise of continued employment. Okay, so but doesn't that- that still, I think, backs us into the idea of what can an employer not say to a potential employer or to an employee if they've got a written document that says you're at-will? The record says that Mr. Bloomberg himself stated they would be employed through November of 2020. The campaign manager said that they repeatedly made promises that they would be employed. I mean, there's allegations suggesting that they were told something orally, and what I hear you saying now is that that stuff doesn't matter because they signed a document saying it was at-will. And are you asking us to adopt a proposition that an employer can say whatever it wants as long as there's a document that says it's at-will? Well, in the first instance, yes, with regard to the alleged statements that are claimed to have been made here, we do believe that the at-will language would preclude them from bringing a claim for either fraudulent or- No matter what was said. Well- I don't understand your argument to be inconsistent with the question that Judge Paris is asking. I mean, for example, if the employer making the offer of employment made lies to induce the employee to accept the contract, which were not about the period of employment but about something like, we, the employer, have received a contract to do things that are going to be very remunerative, and that's a lie, the employer would not get away with that. That would be actionable. That's exactly right. And there are cases like the Stewart case where you had the lawyer who was told that there was a strong environmental practice and then she shows up and there wasn't. I think the third element that we haven't talked about that, Judge LaValle, you had, I think you sort of hit on when you were asking questions of my adversary, is that there's got to be some kind of a clear and ambiguous promise. And what are they talking about here? They're saying what job, where, and for whom. The issue in this case was their allegations that the Bloomberg campaign promised them employment through November 2020. And that really goes to the very heart of the Atwell nature. And I think you're right. It's not inconsistent because there would have to be some kind of a clear and ambiguous promise. And as Judge Swain correctly held, there was none. There's no allegation as to a promise that was made to a specific plaintiff that they were going to do a specific thing, that they were going to work for a specific entity. The case here is about the fact that the plaintiffs- I'm not sure I understand that. They're saying there was a clear, specific promise that you will be employed through November 4th or whatever date it was. Correct. Even after Bloomberg drops out of the race, you will continue to be employed. Why isn't that a specific promise? A promise as to continued employment is exactly the type of promise that is precluded by Atwell language. I think what your adversary said in response to my questions, at least what I understood her to be saying, was that essentially there were two contracts. There was one written contract with the campaign at a specific salary with all kinds of details. Then there was another contract, which was also with the campaign, but it was for employment for an additional period after Bloomberg drops out. It didn't have any specification of salary, but she said, well, there was reliance in giving up other employment opportunities to the takers. Well, first, to the extent that that's their argument, this alleged second contract would not be sufficiently specific to be enforceable. But the other thing that I thought I heard her say- You mean it would lack essential terms? Yeah, exactly. It's like saying if I promise to give you a mortgage, but we don't agree on how much the mortgage will be or what the rate of the loan will be, that's not an enforceable contract. Exactly, and I thought the other thing that I heard her say is that they were relying on the offer letters. Because the offer letters did say what the compensation would be. The offer letters did say what the benefits would be. And the offer letters also did say that the employment was employment at will, that could be terminated at any time for any reason. I think you said earlier, just to make sure I understand, there are no allegations that any specific or individual plaintiff received an oral promise, that the oral promises were general statements made to the public. Is that right? That's correct, and if you comb through the 97-page complaint, you hear there are a lot of generalities. A lot of them refer to quotations from press arguments, and there is one paragraph in the complaint, I think it's paragraph 24, that says that various people made promises, but there's nothing in the complaint. Nowhere can you find in the complaint a specific allegation that a particular plaintiff was made any promise other than that which appears in the offer letter. And there's no question here that they signed the offer letters, and they're not challenging that or the authenticity of those letters. So why wouldn't we send back to amend on that ground, or to leave to amend on that ground? Because given their at will status, I think Judge Swain correctly held that they wouldn't be able to salvage those claims. That their at will status and the fact that the very heart I'm sorry, it's a little bit circular, because on one hand you're saying that it's too ambiguous and it's not specific and it's not related to a particular person, and then on the other hand you're saying that because they were at will, they can't do it. So I'm wondering if we're back in the land that I said earlier, which is that you were using the at will premise to do a whole lot of work. So if it's in fact they were too, it wasn't an ambiguous, they aren't alleging things that are, or they're alleging things that are too ambiguous and they're not saying the material terms or any of that stuff, why doesn't that cause for sending back to leave to amend? Because what they're saying is that the terms were set out in the offer letter. And once the terms are set out in the offer letter and there's no challenge as to the fact that they signed them and that they were an authenticity, the terms in the offer letter, as clear as the $6,000 and the health benefits, is the at will statement. And we believe and we submit that Judge Swain correctly held that they could not amend sufficiently to overcome the clear at will language that was in the offer letter itself. Well, wouldn't it be more efficient or more to the point to say that they've had plenty of opportunity to show how they would amend and how that would change things and they haven't shown anything in their briefing to us or to the district court that would lead to a different result? Well, that is better said than what I said and that is correct. And they have, as you can see, amended the complaint. And three complaints, right? Yeah. But I think the most recent complaint now was after the decision on the motion to dismiss. So I don't think it would be fair to rely on that. But, yes, they certainly have had two opportunities to do so and they have not provided any additional specificity. Okay. Thank you so much. Thank you. Counselor, you have two minutes. Thank you, Your Honor. I just want to make clear that we're not relying on the offer letter to define the employment relationship. The position has been that those letters memorialize terms the plaintiff accepted. But the promise here was for an opportunity for a general election, not just for continued employment. But if you're not relying on the offer letter, then what about the terms, compensation, benefits, et cetera? Again, our position is that the offer letters provide You are relying on the offer letter, at least in part, are you not? You are relying on the offer letter, at least in part, are you not? No, Your Honor, not no. Because the promise was made orally to the plaintiff. And in this context, the promise of the opportunity to work on the general election is different from simply a color employment position. Yeah, but why isn't that a contract? Why isn't the contract you're describing one that is void for lack of essential terms to make a contract? I promise to employ you without specifying what the pay will be is not a complete contract. It's an incomplete contract because essential terms are lacking. Well, Your Honor, I don't think that essential terms are lacking in the context of a national presidential election. Where what's being offered is the opportunity to participate and to be involved in something that's historic and of professional and personal value to the workers. This is not a mortgage contract. This is something where there has to be some kind of open terms because it was not known who was in the Democratic nominee. And it wasn't known what the outcome would be. Nevertheless, the plaintiff promised something of value to them that induced them. It was intended to induce them to leave their jobs and come work for Mr. Bloomberg. And it did. I also wanted to address that there is specificity in the complaint that the promises were made clearly. Orally to the plaintiff. You can look at Joint Appendix page 9 to 92, paragraph 24. Talk about the promises that were made to the plaintiff, John Wood, and others. And as I believe Judge Perez indicated, the plaintiff should have been given an opportunity to amend if those allegations were found to be insufficient. I also wanted just to clarify, there is no categorical bar against these claims in New York, even for workers or at-will employees. And such a finding would be against public policy. It's insufficient. I also wanted to clarify that under Stewart, fraudulent inducement claims are recognizable. And Stewart even held that under New York law, it's elementary where a contract was induced by false representation. The representations are distinct and severable. The fraudulent inducement of a written contract is not necessary to conclude an action for fraud. Your plaintiffs were clearly induced to take action for the benefit of the campaign. And we allege that that was under fraudulent pretenses. The campaign never intended to keep those promises. The contract is not controlled. Okay. Okay, thank you so much. We appreciate it. We'll take it under review. Thank you very much. Thank you. We're moving on to United States v. Alex Hernandez. Yes, can you get up here? Ms. Harvey, you have reserved two minutes, is that correct? Yes, Your Honor. Okay. And you may proceed. Thank you. Thank you. So, good morning, Your Honors. I stand here today asking you to reverse Judge Kestel's case and sentence in the instant matter. And that's based on a number of both procedural grounds and excessive sentence grounds. The procedural grounds, as we've set forth in our papers, is that Judge Kestel believed that he was sentencing my client under the first count, which was the drug count, and that he opined that the drug count did not take into consideration the dangerousness and violence that can be caused in a sham drug transaction. However, if you look at the analysis of the sentencing guidelines, it was the felon in possession count that, in fact, was the driving force behind the calculation of the guidelines. And as you may or may not recall, the guidelines were calculated to go between 33 and 41 months. Well, I think what the district court was saying, I mean, that the clear fact is that this kind of a transaction, in which you try to swindle other drug dealers, has a much higher likelihood of violence than just being a felon in possession. A felon in possession frequently is a circumstance that has very, very low likelihood of violence. But the nature of this transaction with guns involved clearly had a very high likelihood of violence. There's no basis upon which Judge Kestel made that determination, other than an opinion that he may have held. I respectfully- I was just thinking about it. Common sense. Is it common sense? Common sense says that, at least when I'm standing before a judge when I have a felon in possession or I have a drug case,